IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JANET LEIGH JORDAN BRUHL,          :

    Plaintiff,                     :

vs.                                :
                                          CIVIL ACTION 08-740-M

MICHAEL J. ASTRUE,                 :
Commissioner of
Social Security,                   :

    Defendant.                     :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (Doc. 25).  Oral argument was heard on July 28, 2009.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative action not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-seven years old, had completed a high school education (Tr. 47), and had previous work experience as a fast food manager (Tr. 47). In claiming benefits, Plaintiff alleges disability due to Crohn's disease, arthritis, migraines, seizure disorder, obsessive compulsive disorder/panic disorder without agoraphobia, major depressive disorder, and personality disorder (Doc. 13 Fact Sheet).

The Plaintiff filed an application for SSI on February 16, 2006 (Tr. 93-96). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not perform her past relevant work as a fast food manager, Bruhl could perform specified sedentary work in the economy (Tr. 10-22). Plaintiff requested review of the hearing decision (Tr. 4-6) by the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-seven years old, had completed a high school education (Tr. 47), and had previous work experience as a fast food manager (Tr. 47). In claiming benefits, Plaintiff alleges disability due to Crohn's disease, arthritis, migraines, seizure disorder, obsessive compulsive disorder/panic disorder without agoraphobia, major depressive disorder, and personality disorder (Doc. 13 Fact Sheet).

The Plaintiff filed an application for SSI on February 16, 2006 (Tr. 93-96). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not perform her past relevant work as a fast food manager, Bruhl could perform specified sedentary work in the economy (Tr. 10-22). Plaintiff requested review of the hearing decision (Tr. 4-6) by the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Bruhl alleges that the ALJ erred in not considering certain evidence relevant to her Crohn's disease (Doc. 13).  Defendant has responded to—and denies—this claim (Doc. 18).  The relevant medical evidence of record follows.

On January 12, 2006, Plaintiff was examined by Dr. Daren A. Scroggie, with Diagnostic & Medical Clinic (hereinafter D&MC), for routine follow-up of Crohn's-related arthropathy (Tr. 287-89).  It was noted that her joint pain and achiness had resolved and she was functioning better after starting the medicine Remicade[1] (Tr. 288).  Scroggie noted that Bruhl was in no acute distress and recorded that Plaintiff had indicated that she had "noticed a great improvement in control of both inflammatory arthritis and bowel symptoms since starting Remicade" (Tr. 288). Plaintiff was seen on February 17 by Dr. Matthew Eves, also with D&MC, who noted that she was doing well from a Crohn's standpoint (Tr. 286).  On March 13, Dr. Eves stated that Plaintiff was responding nicely to the Remicade (TR. 284).  On May 1, Eves stated that the medicine was working well and would be continued (Tr. 282).  On July 6, 2006, Dr. Eves completed a Crohn's Disease Pain Questionnaire in which he indicated that when the disease is

---

[1] "*Remicade* is indicated for reducing signs and symptoms and including and maintaining clinical remission in adult and pediatric patients with moderately to severely active Crohn's disease who have had an inadequate response to conventional therapy."  *Physician's Desk Reference* 943-53 (62nd ed. 2008).

active, Bruhl experienced pain that would affect her ability to work; this pain was consistent with his diagnosis and the medical evidence (Tr. 252).  The doctor also indicated that Plaintiff's prescribed medication causes the side effect of immunosuppression (*id.*).  On August 17, Bruhl indicated that the Remicade was still working, but that its effectiveness was reduced a week to two weeks after the infusion; Dr. Eves noted that Plaintiff had lost eighteen pounds since the examination in May and changed the Remicade infusion from once every two months to monthly (Tr. 280).  On November 16, the doctor noted that Bruhl was in no obvious distress and that she had done "relatively well" on the increased medical regimen (Tr. 279).

In January 2007, Plaintiff was admitted to Mobile Infirmary for a three-day hospitalization to treat her Crohn's disease (Tr. 293-99).  She was discharged in stable condition with a good prognosis.

On March 29, 2007, Dr. Eves noted that the Remicade had been discontinued because of an exacerbation of her Crohn's disease; he was going to start the regimen again, however (Tr. 308).  On June 7, Dr. Scroggie indicated that he was going to increase the dose of Remicade each month (Tr. 304).

On September 17, 2007, a consultative examination was performed by Dr. Michelle S. Jackson who noted that Plaintiff was in no apparent distress (Tr. 309-23).  The doctor summarized the

medical records and performed a thorough examination; her conclusion, in pertinent part, was as follows:

> She certainly does have a history documented by her chart records of Crohn's disease, and she is on medications for that.  She does have diarrhea that can limit some of her activities.  However, she is back on her Remicade, and that could possibly get better with treatment. . . . The limiting factor in her work seems to be her diarrhea with her Crohn's disease, and hopefully that will be better controlled with medications, but otherwise she does not appear to be completely or totally disabled.  Of course she would need to have some type of job that would accommodate her bathroom privileges or possibly some type of work at home.

(Tr. 312).  Jackson went on to complete a physical capacities evaluation (hereinafter *PCE*) which suggests that Plaintiff had the ability to stand and walk, each, for one-to-two hours and sit five-plus hours at a time while she could stand/walk for three hours and sit five-to-eight hours during an eight-hour day; she was also capable of lifting and carrying five pounds constantly, five-to-ten pounds frequently, and ten-to-fifteen pounds occasionally, but never more than twenty pounds (Tr. 320).

Following one of her Remicade infusions, Plaintiff received Routine Discharge Instructions for this medication, from Cyrina Rentschler, R.N., with hand-written instructions which stated the following:  "Due to decreased Immune System from medication, limit exposure to the public for at least 72 hours" (Tr. 332).

5

The Nurse also indicated that Bruhl had received Remicade infusions since January 4, 2006 and that she gets a new treatment every four weeks (Tr. 331).  These documents were faxed from D&MC (Tr. 330).

At the evidentiary hearing before the ALJ, a vocational expert (hereinafter *VE*) testified, in response to a hypothetical question posed by the ALJ, that the PCE completed by Dr. Jackson would allow Bruhl to perform specified work in both the light and sedentary work categories (Tr. 48-49, 333).  In response to questions posed by Bruhl's attorney, the VE stated that those jobs could not be performed at home and that missing three days of work a month would affect one's ability to perform gainful activity (Tr. 51-52).  The VE also stated that a restriction of non-exposure to the general public for three days would eliminate those specified jobs as well (Tr. 52-53).

In his decision, the ALJ gave determinative evidentiary weight to the opinions of Dr. Jackson (Tr. 19).  Accepting the VE's testimony, the ALJ found that Plaintiff could perform specified sedentary jobs (Tr. 21).  The ALJ also made the following specific determination:

> Nothing in the record suggests that the claimant's physical and/or mental impairments have been incapable of being alleviated or controlled with the proper and regular use of prescription and/or over-the-counter medications.  In fact, the record discloses that such *medications have proven successful*

> *in assisting* the claimant in improving and
> regulating her conditions and in mitigating
> accompanying symptomatology.  While the
> record has made fleeting and often isolated
> references to various medication side effects
> (primarily immunosuppression), there is no
> objective evidence to suggest that the
> claimant has experienced medication side
> effects of the severity and frequency
> reasonably expected to produce significant,
> ongoing functional limitations for the
> claimant.  The undersigned finds that there
> is no objective documentation that the
> claimant's performance of daily activities
> has been substantially impaired due to her
> diagnosed conditions.  The undersigned
> further notes that the claimant's clinical
> examination findings have often been found to
> be normal or minimally abnormal, and the
> objective diagnostic evidence of record has
> been sparse.

(Tr. 19-20) (emphasis in original).

Bruhl has claimed that the ALJ erred in not considering certain evidence relevant to her Crohn's disease.  More specifically, Plaintiff asserts that the ALJ erred in that he gave no credence to the evidence provided by "Registered Nurse (RN) Cyrina Rentschler who administers the Remicade regiment for Plaintiff's Crohn's disease and who stated that due to a decreased immune system as a result of the Remicade regiment, Plaintiff must limit her exposure to the public for at least 72 hours every 4 weeks" (Doc. 13, p. 4).

The discussion of this issue has focused on whether the statements from Rentschler is an acceptable medical source.  The social security regulations indicate that the RN's statements are

7

considered an "other source" of evidence which *may*—but does not have to—be considered.  20 C.F.R. § 416.913(a, d) (2008).  The Court notes that the information came from Dr. Eves's office through an RN designated to administer the medication (Tr. 330-32).  The Court also notes that Dr. Eves himself indicated that Plaintiff's prescribed medication caused immunosuppression (Tr. 252).  Lastly, the Court notes that the *Physician's Desk Reference* specifically states that "[p]atients treated with Remicade are at increased risk for infections, including progression to serious infections leading to hospitalization or death."  *Physician's Desk Reference* 943 (62nd ed. 2008).

At this Court's direction, the Parties have also argued the issue of whether the ALJ developed a full, fair record in this action.  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court finds that the record has not been properly developed herein.  Though the ALJ discounted the Rentschler statements, there is certainly some basis for their consideration, considering Dr. Eves's statement regarding immunosuppression and the strong warning provided in the *PDR*.  Based on the information that has been presented, a determination could be readily made as to whether Bruhl is—or is not—disabled,

depending on whether her doctor agrees that she needs 72 hours of avoiding the general public following a Remicade treatment.  The Court finds that the ALJ's failure to seek out and obtain this opinion renders his determination unsupported by substantial evidence.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's need to avoid contact with the general public immediately following her Remicade infusions.  Judgment will be entered by separate Order.

DONE this 28th day of July, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE